UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michael Patrick Keefe, an individual, | Civil File No.: 09-2941 DSD/SER |
| Plaintiff, | |
| vs. | **ORDER** |
| City of Minneapolis, et al, | |
| Defendants, | |
| vs. | |
| Star Tribune Media Company, LLC, David Chanen, | |
| Movants. | |

---

Albert T. Goins, Sr., Esq., Goins Law Offices, Ltd., 301 4th Avenue, Suite 378, Minneapolis, MN 55415 and Damon L. Ward, Esq., Ward Law Group, 301 4th Avenue South, Suite 378, Minneapolis, MN 55415 on behalf of Plaintiff.

James Anthony Moore and Sara Lathrop, Esqs., Minneapolis City Attorney's Office 350 South Fifth Street, Suite 210, Minneapolis, MN 55415 on behalf of Defendants.

John P. Borger, Faegre Baker Daniels, LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota, 55402 on behalf of Movants.

---

STEVEN E. RAU, United States Magistrate Judge

This matter is before the Court on Movant Star Tribune Media Company, LLC and David Chanen's Motion to Quash Subpoena Served on Star Tribune Reporter David Chanen [Doc. No. 112]. This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

This discovery dispute is the most recent quarrel between Plaintiff Michael Patrick Keefe ("Keefe") and Defendants City of Minneapolis (the "City") and Tim Dolan ("Dolan"), personally and in his official capacity (collectively, "Defendants"). The facts of this case have been recited in detail in several Orders. [Doc. Nos. 52, 63, 77, 88, 101]. In the interest of brevity, only the facts pertinent to this Motion follow.

David Chanen ("Chanen") is a reporter for the Star Tribune, a daily newspaper in Minneapolis, Minnesota. On January 28, 2008, the Star Tribune published an article authored by Chanen entitled "Lieutenant: Misconduct Letter False, Slanderous—It's the Latest Sign of Tension Within the Minneapolis Police Department." (January 28, 2008 Article, Ex. C., Attached to Second Decl. of David Chanen in Supp. of Mot. to Quash Subpoena, "Second Chanen Decl.") [Doc. No. 148]. The article referenced a letter from the City attorney's office "recently made public" that accused Keefe of professional misconduct. (*Id.*). The article also contained several quotes of Keefe in response to the allegations made in the letter and on the reported conflict within the Minneapolis Police Department ("MPD").

A second Chanen-authored article entitled "Did Minneapolis Police Officer Spin Lies?" appeared in the Star Tribune on May 8, 2009. (May 8, 2009 Article, Ex. D., Attached to Second Chanen Decl.) [Doc. No. 148]. The sub-headline read "Lt. Michael Keefe, Whom the FBI Now Describes as a Threat, Has Been Suspended Over Alleged Rumors He Spread About Other Officers and Agents Investigating Corruption in a Task Force He Supervised." (*Id.*). The article referenced an internal investigation resulting in Keefe's suspension and relied on "sources." (*Id.*). The identities of the sources were not revealed. On the day the article was published,

Keefe was relieved of duty. (Pl.'s First Amended Compl., "First Amended Compl.") [Doc. No. 19 at ¶ 33].

### A. State Proceedings

Shortly after the second article, in August 2009, Keefe filed a lawsuit against the City and John Does 1, 2, and 3 in Hennepin County District Court (the "State Proceedings"). The complaint alleged that certain unnamed City employees (the John Does) communicated confidential information about Keefe to reporters at the Star Tribune newspaper and other local news outlets and that the information "appeared in or [was] discussed in various news media in the Twin Cities." (State Compl., Ex. 1 at ¶ 6, Attached to Aff. of Sara J. Lathrop, "Lathrop Aff.") [Doc. No. 117]. Keefe asserted that these communications established the basis for three claims: (1) violation of the Minnesota Data Practices Act, (2) breach of common law right of privacy, and (3) defamation. (*Id.* at ¶¶ 11, 16, 23).

During discovery in the State Proceedings, Keefe deposed five MPD officers about their communication with Chanen and other members of the media. (Trs. of Deps. of Grant Snyder, Andrew Smith, Patrick King, Matthew Wente, and Mike Martin, Exs. 1–5, Attached to Decl. of Damon Ward) [Doc. No. 140]. On May 3, 2010, the State Proceedings were settled; Keefe released "any and all claims asserted in the [state] lawsuit." (Settlement Agreement and General Release, Ex. 3 at 1, Attached to Lathrop Aff.) [Doc. No. 117].

### B. Federal Proceedings

Keefe filed the instant action against Defendants in Hennepin County District Court on October 1, 2009, and Defendants removed. The Complaint alleged that the Defendants engaged in a tacit agreement and conspiracy resulting in adverse employment actions and harassment in violation of his statutory, civil, and constitutional rights. Keefe asserted common law and

3

statutory whistleblower claims, reprisal, invasion of privacy, intentional infliction of emotional distress, and violations of 42 U.S.C. § 1983, 1985, 1986 and 1988. (Complaint, Ex. A at ¶¶ 39, 43, 50, 52–53, 59–61, 64–66, 69, Attached to Notice of Removal) [Doc No. 1]. Keefe amended the Complaint to add a claim for reprisal under 42 U.S.C. § 1981 on July 13, 2010 (the "First Amended Complaint"). (First Amended Compl.) [Doc. No. 19 at ¶ 74].

According to the First Amended Complaint, Dolan "was fearful of [Keefe's] potential testimony [at the upcoming trial of Michael Roberts] and sought to deter him from testifying in a court or tribunal." (*Id.* at ¶ 31). Keefe alleges that MPD officers may have acted in concert with Dolan and "leaked" information to Chanen for the articles, intending to discourage him from testifying at the Roberts trial and to discredit him, personally and professionally. (Plaintiff's Mem. of Law in Opp. To Non-Party Deponent's Mot. to Quash Pl.'s Subpoena, "Pl.'s Mem.") [Doc. No. 138 at 4]. Keefe deposed the five officers he claims divulged the information during discovery in the State Proceedings, and all of them "denied discussing Keefe" prior to publication of Chanen's articles or "cannot recall" whether they discussed Keefe. (Pl.'s Mem. at 10); (Snyder Depo. at 65, 75, 76–77, 82, 86–93, Smith Depo. at 35, King Depo. at 17–18, Wente Depo. at 70–71, and Martin Depo. at 39–40, Exs. 1–5, Attached to Decl. of Damon Ward) [Doc. No. 140].

Keefe served a subpoena *duces tecum* and deposition notice on Chanen on January 13, 2012. (January 13 Subpoena, Ex. A, Attached to Decl. of David Chanen in Supp. of Mot. to Quash Subpoena) [Doc. No. 120]. The subpoena instructed Chanen to arrive at a deposition noticed for January 19, 2012 with "any and all notes of conversations, . . . email correspondence, . . . and documents exchanged" between him and "all sources for the stories [Chanen] reported on Minneapolis Police Sergeant Michael Patrick Keefe." (*Id.*). Keefe seeks to depose Chanen

4

about the identities of his sources for the January 2008 and May 2009 articles.[1] Star Tribune and Chanen's counsel sent a written objection to Keefe's counsel the day they received the subpoena and requested a response by close of business on January 17, 2012.[2] They received no response and filed the instant motion on January 18, 2012.

II.     DISCUSSION

Discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Pursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies. Fed. R. Civ. P. 26(b)(1), 34(c). When the material sought is privileged, and on a timely motion, a court must quash or modify a subpoena that requires disclosure. Fed. R. Civ. P. 45(c)(3)(A)(iii). Because the reporter's privilege protects the material sought under Keefe's subpoena is protected by and that privilege is not overcome, the Motion is granted.

---

[1]     Chanen does not have and has never had documents responsive to the subpoena or the amended subpoena. (Chanen Reply Mem. at 9–10; Second Chanen Decl. ¶ 4; (Transcript of Mots. Hr'g on April 10, 2012, "Tr.") [Doc. No. 157 at 15]. Accordingly, the analysis that follows applies only to the deposition testimony sought.

[2]     This subpoena was served six days before the deposition was to take place, with the Rev. Martin Luther King, Jr. holiday taking place in the intervening time. (Mot. to Quash Subpoena Served on Star Tribune Rep. David Chanen, "Chanen's Mot.") [Doc. No. 112 at 9]. Keefe did not contact Chanen or his counsel to discuss scheduling prior to serving the subpoena and failed to respond to the January 13 letter from Chanen's counsel noting a lack of "reasonable time to comply" as required by Federal Rule of Civil Procedure 45(c)(3)(A)(1). (*Id.* at 10). The insufficiency of this notice and the lack of collegiality in the service of this subpoena would be unacceptable if the recipient was a party, and it certainly would not be permitted in the case of a non-party.

On March 2, 2012, Keefe served an amended subpoena *duces tecum* that noticed a deposition to occur on April 11, 2012. (March 2 Subpoena, Ex. B, Attached to Second Decl. of David Chanen in Supp. of Mot. to Quash Subpoena) [Doc. No. 149]. The subpoena also contained a narrower document request than the first, limiting the order to "[a]ny and all documents exchanged" with Dolan and five MPD officers regarding the January 2008 and May 2009 articles. (*Id.*)

### A. Establishing a Qualified Reporter's Privilege

In *Branzburg v. Hayes*, the Supreme Court confronted the narrow issue of whether reporters may be subpoenaed to testify in criminal grand jury proceedings and held unequivocally that the First Amendment was not the source of an absolute privilege for reporters. 408 U.S. 665, 667 (1972). Justice Powell's concurring opinion, nevertheless, recognized that a qualified reporter's privilege may be proper in some circumstances because "news gathering is not without its First Amendment protections." *Id.* at 707. In determining a privilege, Justice Powell advocated balancing the freedom of the press against the obligation of citizens to provide testimony. *Id.* at 710.

Relying on Justice Powell's concurring opinion in *Branzburg*, most federal courts grant a qualified privilege for journalists against compelled disclosure of information gathered in the news-making process.[3] The tests and the circumstances under which they apply vary, but each requires the evaluating court to weigh the public interest in protecting the First Amendment against the private interest in compelling a reporter to provide information. *See, e.g.*, *Zerilli v. Smith*, 656 F.2d 705, 711–12 (D.C. Cir. 1981) (citations omitted). Where a court finds the First Amendment rights of the reporter outweigh the requesting party's need for the information and grants the privilege, it typically extends to a reporter's underlying work product, as well as an

---

[3] Although the majority of the circuits have interpreted *Branzburg* as establishing a qualified privilege for journalists to resist compelled discovery, the scope of that privilege varies. *See Bruno & Stillman, Inc. v. Globe Newspaper Corp.*, 633 F.2d 583, 595–96 (1st Cir. 1980); *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 32–33 (2d Cir. 1999); *In re Madden*, 151 F.3d 125, 128–29 (3d Cir. 1998); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir.), *cert. denied*, 479 U.S. 818 (1986); *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983); *McKevitt v. Pallasch*, 339 F.3d 530, 531–32 (7th Cir. 2003); *Shoen v. Shoen*, 5 F.3d 1289, 1292–93 (9th 1993); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 436–37 (10th Cir. 1977); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981). The Sixth Circuit interprets *Branzburg* as denying a qualified privilege to journalists. *See In re Grand Jury Proceedings*, 810 F.2d 580, 584–85 (6th Cir. 1987).

informant's identity. *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 143–44 (2nd Cir. 1987); *J.J.C. v. Fridell*, 165 F.R.D. 513, 516 (D. Minn. 1995).

While the existence of a qualified reporter's privilege is an open question in this Circuit, *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 n.8 (8th Cir. 1997), several district courts have considered and recognized the availability of the privilege. *Doe v. Young*, No. 4:08-CV-197, 2009 WL 1383263 (E.D. Mo. 2009); *Richardson v. Sugg*, 220 F.R.D. 343, 347 (E.D. Ark. 2004); *Fridell*, 165 F.R.D. at 516; *Cont'l Cablevision, Inc. v. Storer Broad. Co.*, 583 F.Supp. 427, 433 (D.C. Mo. 1984). In accordance with those courts and the weight of the authority in other circuits, a qualified reporter's First Amendment privilege applies here.

### B. Defeating Chanen's Qualified Reporter's Privilege

To defeat Chanen's qualified privilege, Keefe must demonstrate a countervailing constitutional or compelling concern that outweighs the public interest in protecting the First Amendment. Then-Magistrate Judge Ann D. Montgomery adopted a three-pronged test for establishing such a concern in *J.J.C. v. Fridell*. 165 F.R.D. at 516. Judge Montgomery held that a requesting party may overcome the privilege if he or she can demonstrate that the information sought is: (1) "critical to the maintenance or the heart of the claim," (2) "highly material and relevant," and (3) "unobtainable from other sources." 165 F.R.D. at 516. All three factors must be satisfied in order for a requesting party to establish a need that outweighs the reporter's privilege.

In calibrating the scale to weigh the respective concerns in this matter, it must be noted that Chanen is a stranger to this litigation. He is neither a party nor a witness to any of the underlying facts; he has no dog in this fight and has not accepted voluntarily the burden of discovery attendant to modern civil litigation, as the parties have. Accordingly, the concern for

the unwanted burden thrust upon him is a consideration entitled to special weight in evaluating the balance of competing interests. *See Datcard Syss., Inc. v. PacsGear, Inc.*, No. 11-mc-25 (DSD/SER), 2011 WL 2491366, at *2 (D. Minn. June 23, 2011) ("The court affords particular consideration to burdens placed on nonparties."); *see also Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 927 (8th Cir. 1999) (citations omitted). Because Keefe failed to satisfy the three *Fridell* prongs, the balancing test weighs heavily in favor of Chanen's First Amendment rights and the nondisclosure of the information.

### 1. The Information Sought Is Not "Critical to the Maintenance or Heart of the Claim"

At its heart, this lawsuit is about an alleged tacit conspiracy that amounted to reprisal and retaliation against Keefe. The information sought here relates only to two supposed instances of wrongdoing within a larger scheme that allegedly spanned at least two years. By Keefe's own admission, these "leaks" were "part of a wider pattern of retaliation and reprisal."[4] (Decl. of Pl.

---

[4]   Keefe admitted several times in his memoranda and affidavits opposing this motion that the information sought is only one "piece" of a larger framework:

- "The efforts by these officers, if proven, were **part of a larger web** of retaliatory actions and reprisal by MPD and Dolan to chill and intimidate and punish Mike Keefe for stepping forward to expose a flawed and corrupt investigation and to prevent him from making any further disclosures." (Plaintiff's Mem. of Law in Opp. To Non-Party Deponent's Mot. to Quash Pl.'s Subpoena, "Pl.'s Mem.") [Doc. No. 138 at 4] (emphasis added).
- "facts involving the disclosure of data which were **part of a scheme or pattern of reprisal or retaliation** against Keefe are not just relevant, but they were never intended to be released by the terms of the State Court settlement." (Plaintiff's Surreply Mem. to the Minneapolis Defendants' Reply Mem. "Pl's Surreply") [Doc. No. 150 at 4] (emphasis added).
- "Plaintiff believes that the activity surrounding the leaks to the media, if proven, are **further evidence of a retaliatory intent and motive on the part of Defendants**. It is the motive and "moving force" behind the reports or leaks to the media that are relevant to the instant lawsuit—not the leaks alone—and that is what Plaintiff is entitled to explore." (Pl's Surreply at 5) (emphasis added).

Michael Patrick Keefe Further Opposing Mot. to Quash Subpoena) [Doc. No. 151 at ¶ 2]. Lack of information from Chanen regarding these two isolated instances of purported retaliation will not critically harm Keefe's case.

### 2. The Information Sought Is Not "Highly Material and Relevant"

Unlike the complaint in the State Proceedings, the First Amended Complaint in this action makes no mention of the articles or their role in Keefe's claims. Keefe argues that Chanen's articles and his sources are relevant because the articles "were part of a larger web of retaliatory actions and reprisal by the MPD and Dolan to chill and intimidate and punish Mike Keefe." (Pl.'s Mem. at 4). In order to draw this conclusion, Keefe relies on a series of inferences and asks the Court to do the same to deem the information sought "highly material and relevant" to his claims. First, Keefe assumes that at least one of the five officers he suspects

---

- "[T]he **entire constellation of Defendants' actions** in seeking to intimidate and harass Keefe for reporting his knowledge of a potentially race-based prosecution and the perceived racist conduct of members of VOTF are all relevant facts." (Pl's Surreply at 6) (emphasis added).
- "I believe the negative publicity generated about me was a part of a **wider pattern of retaliation and reprisal** against me by Defendants Minneapolis and Dolan through certain MPD officers." (Declaration of Plaintiff Michael Patrick Keefe Further Opposing Mot. to Quash Subpoena) [Doc. No. 151 at ¶ 2] (emphasis added).

Keefe's counsel made similar concessions at the hearing on this Motion:

- "That disclosure was part of it, and we believe that [the disclosure] **will show or evidence a larger scheme** of retaliation and reprisal." (Tr. at 23) (emphasis added).
- "[I]t would be difficult to slice out or surgically remove a certain portion of the nucleus of operative facts when we believe it was **part of a larger scheme** that goes back to the internal affairs complaints . . . that continues through Mr. Keefe's demotion, continues through to their failure to properly investigate his subsequent internal affairs complaints. All of that is part of this retaliation and reprisal. This incident that brings us here today and, particularly, the May 8, 2009 contracts that appear to be clearly evidenced by cell phone records, **this is just one piece of that**." (Tr. 30–31) (emphasis added).

supplied the information to Chanen. Then, he presupposes that Chanen will be able accurately recall and "match" the officers with their statements from the articles. Finally, Keefe hopes to prove subsequently that the officers made the statements out of retaliation and/or at the behest of Dolan. While this string of conjectures exists in the universe of imaginable outcomes, it is too much for the Court to rely on Keefe's hypothesis to compel Chanen's deposition.

Keefe asserts that "Chanen's oral deposition is necessary; not to establish the identity of those who provided him information, but to **verify** the particular information of those who have admitted to speaking with Chanen regarding his articles and who cannot not [sic] now seem to recall the substance of the conversations." (Plaintiff's Mem. of Law in Opp. To Non-Party Deponent's Mot. to Quash Pl.'s Subpoena, "Pl.'s Mem.") [Doc. No. 138 at 10–11] (emphasis added); *see also* Pl.'s Mem. at 16. Despite Keefe's contentions, it is plain that he seeks this information to obtain potential impeachment evidence. Keefe wants to depose Chanen because he hopes "to verify" the evidence that supports a finding that at least one MPD officer acted as a source to Chanen and later point to the inconsistencies in the officer's deposition testimony at yet another deposition or at trial. Verification of information means "to establish the truth, accuracy or reality of," or "to confirm or substantiate in law by oath." Verify, Merriam-Webster Dictionary (2012), *available at* http://www.merriam-webster.com/dictionary/verify.

The mere possibility of impeachment evidence is an insufficient reason to vitiate the qualified privilege. *See Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 20 n.3 (D.D.C. 1986); *Concerned Citizens of Belle Haven v. The Belle Haven Club*, No. 3:99CV1467, 2004 WL 3246719, at *2 (D. Conn. 2004); *Holland v. Centennial Homes, Inc.*, Nos. 3:92–CV–1533–T, 3:92–CV–1534–T, 1993 WL 755590, at *6 (N.D. Tex. 1993). Chanen will not be compelled to provide the sources for his article on the mere speculation that it may lead to possible

10

impeachment evidence, especially in a civil case where he is neither a party nor a witness to the facts upon which the lawsuit is based.

Further, Chanen specifically cited the protection of his confidential sources as part of the rationale for asserting the reporter's privilege and quashing this subpoena, explaining it would "burden [his] reporting" to reveal those sources. (Chanen Decl. ¶ 8). Whether the information sought is a confidential or non-confidential source is not dispositive when considering the potential adverse effects that forced disclosure would have on the First Amendment rights of the news media and their readers. *See United States v. Blanton*, 534 F.Supp. 295, 297 (S.D. Fla. 1982), *aff'd*, 730 F.2d 1425 (11th Cir. 1984); *Altemose Constr. Co. v. Bldg. & Constr. Trades Council*, 443 F.Supp. 489, 491 (E.D. Pa. 1977); *von Bulow by Auersperg*, 811 F.2d at 143 (citing *Loadholtz v. Fields*, 389 F.Supp. 1299, 1300 (M.D. Fla. 1975)). Nonetheless it is a factor to be considered in weighing competing interests. *See Shoen v. Shoen*, 5 F.3d 1289, 1295–96 (9th Cir. 1993) (citing *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980)). Chanen's sources requested and received assurance that their identities would remain confidential. Second Chanen Decl. ¶ 3. Keefe's interest in "verifying" information that goes only to credibility issues which are not essential to Keefe's case-in-chief does not lend any support to overcoming Chanen's interest in protecting his confidential sources.

The statements at issue here are parts of two articles, which are part of an "entire constellation" of actions, which are part of a "larger web of retaliatory actions and reprisal" by Defendants. (Plaintiff's Surreply Mem. to the Minneapolis Defendants' Reply Mem. "Pl's Surreply") [Doc. No. 150 at 6]; (Pl.'s Mem. at 4). This is not a situation where an undisclosed source was allegedly the sole basis for the statement on which a plaintiff asserts a case of

11

defamation.[5] *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980). Rather, the disclosures here go only to a facet of the case and, at most, would result in cumulative evidence undermining the credibility of the officers. Thus, this information cannot be said to be "highly material and relevant."

### 3. The Information Sought May Be Obtainable from Other Sources

In his efforts to uncover Chanen's sources, Keefe deposed only the five MPD officers he alleges "leaked" information. The officers either denied involvement or could not recall whether they discussed Keefe with Chanen. Simply because Keefe is dissatisfied with those answers does not demonstrate an exhaustion of all reasonable alternative means for establishing the identity of Chanen's sources. Keefe himself demonstrated that other avenues for obtaining this information are available by considering the phone records of calls between Chanen and the five MPD officers. Moreover, it appears from the depositions of those officers that some of the information in Chanen's articles was available publicly.[6] As for any information about Dolan's involvement that Chanen could potentially reveal, the Court is not aware of whether Keefe deposed Dolan regarding his knowledge of the articles and the sources on which they rely. The role that Dolan played in the disclosure of the information, if any, could still be obtained directly from him.

---

[5] It is important to note that Keefe is not suing any of the alleged sources for Chanen's articles for defamation or libel, and, without prejudging the merits, it seems that any suit regarding the substantive content of those purported communications was settled pursuant to the agreement reached in the state action. If questions remain for resolution regarding the preclusive effect of the settlement agreement on any claims relating to the alleged communications with Chanen, those questions are not properly raised in a discovery motion.

[6] Snyder and King offered in their depositions that the FBI could have been a source for some of the information—after all, Keefe's photo "was posted on the glass as you walked into the FBI's field office." (Snyder Depo. at 100; *see also* King Depo. at 32). Snyder also pointed to the fact that the Bureau of Alcohol, Tobacco, Firearms and Explosives disclosed that they banned Keefe from their offices, but he was not sure how far that disclosure extended. (Snyder Depo. at 101–02).

Keefe failed to establish any of the three prongs of *Fridell*. In balancing their competing interests, Chanen's qualified reporter's privilege under the First Amendment outweighs Keefe's curiosity.[7] Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Movant Star Tribune Media Company, LLC and David Chanen's Motion to Quash Subpoena on Star Tribune Reporter David Chanen [Doc. No. 112] is **GRANTED**. Movant Star Tribune Media Company, LLC and David Chanen's request for fees is **DENIED**.

Dated: May 25, 2012                           *s/ Steven E. Rau*
                                              STEVEN E. RAU
                                              United States Magistrate Judge

---

[7] According to Keefe's representations to the Court, other local news media reported stories similar to those considered here and may have relied on the same sources. The findings and principles applied to Chanen and the articles in the instant Motion apply to those reporters and stories.